**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ACCESS POINT FINANCIAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HILLSBORO HOTEL HOLDINGS GROUP, LLC; DEAN KIRKLAND; and KRISTIN KIRKLAND,<br><br>Defendants. | CIVIL ACTION FILE NO.:<br><br>______________ |

# COMPLAINT

Plaintiff Access Point Financial, LLC files this Complaint for damages against Defendants Hillsboro Hotel Holdings Group, LLC, Dean Kirkland, and Kristin Kirkland, respectfully showing this Court as follows:

## Parties, Jurisdiction, and Venue

1. Access Point LLC f/k/a Access Point Financial, Inc. ("Access Point" or "Plaintiff") is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in DeKalb County, Georgia. Access Point's sole member is WCP APF Sub Holdings, Inc., a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York. For purposes of diversity jurisdiction, Access Point is a citizen of Delaware and New York.

2. Hillsboro Hotel Holdings Group, LLC ("Hillsboro" or "Borrower") is a limited liability company organized and existing under the laws of the state of Nevada with its principal office located at 2300 E 3rd Loop, Suite 100, Vancouver, Washington 98661. Hillsboro may be served through its registered agent Business Filings Incorporated at 701 S Carson St Ste 200, Carson City, Nevada 89701. Borrower's membership consists of (i) Anseal, LLC ("Anseal"); (ii) Aginsky Holdings, LLC ("AH"); (iii) Black Diamond Group, LLC ("BDG"); and (iv) K&F, LLC ("K&F"). The members of Anseal are (i) AH; (ii) Vostock, LLC ("Vostock"; and (iii) K&F. The members of AH are (i) Alexander Aginsky and (ii) Michelle Aginsky, both individual citizens of Oregon. The sole member of BDG is Polina Kazakova, an individual citizen of Oregon. The members of K&F are (i) Andrey Frolov and (ii) Julija Krilova, both individual citizens of Oregon. The members of Vostock are (i) Sergey Vostrikov and (ii) Elina Vostrikova, both individual citizens of Oregon. For purposes of diversity jurisdiction, Hillsboro is a citizen of Oregon.

3. Dean Kirkland is an individual citizen of the state of Washington and may be served with process at 2300 E 3rd Loop, Suite 100, Vancouver, Washington 98661 or wherever he may be found. For purposes of diversity jurisdiction, Dean Kirkland is a citizen of Washington.

4. Kristin Kirkland (together with Dean Kirkland, the "Guarantors", and collectively with Dean Kirkland and Borrower, the "Defendants") is an individual

citizen of the state of Washington and may be served with process at 2300 E 3rd Loop, Suite 100, Vancouver, Washington 98661 or wherever she may be found. For purposes of diversity jurisdiction, Kristin Kirkland is a citizen of Washington.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

6. Venue is appropriate in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2), LR 3.1(B)(3), N.D. Ga., and the forum selection clauses contained in paragraph 20(i) of the Loan Agreement (defined below) and paragraph 14(g) of the Guaranty (defined below).

**Facts**

7. In summer 2016, Access Point made a loan to Borrower in the amount of $2,450,000 (the "Loan") to acquire the furniture, fixtures and equipment to be used in connection with the refurbishing or operations of a Staybridge Suites located at 6225 NW Casper Place Hillsboro, Oregon 97124 (the "Hotel") and to pay for such closing costs incidental to the Loan. In connection with the Loan, Defendants executed and delivered certain documents to Access Point.

8. On or about June 30, 2016, the Borrower executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $2,450,000.00 (as may have been amended, modified, restated, and/or

supplemented from time to time, the "2016 Note") for the Loan. A true and correct copy of the 2016 Note is attached hereto as **Exhibit A** and incorporated by reference.

9. On or about July 28, 2016, and to secure the Loan, the Borrower executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "2016 Loan Agreement"). The 2016 Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment purchased with the proceeds of the Loan, as more specifically described in the 2016 Loan Agreement (collectively, the "2016 Equipment"). A true and correct copy of the 2016 Loan Agreement is attached hereto as **Exhibit B** and incorporated by reference.

10. On or about July 28, 2016, and to further secure the Loan, Guarantors executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "Guaranty") pursuant to which Guarantors irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Borrower to Access Point under the 2016 Note. A true and correct copy of the Guaranty is attached hereto as **Exhibit C** and incorporated by reference.

11. On or about October 31, 2017, the Borrower, Guarantors, and Access Point entered into that certain Loan Modification Agreement, modifying the 2016 Loan Agreement as set forth therein (the "Loan Modification"). A true and correct copy of the 2018 Note is attached hereto as **Exhibit D** and incorporated by reference.

12. On or about February 16, 2018, the Borrower executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $2,450,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "2018 Note" and collectively with the 2016 Note, the "Note") for the Loan. A true and correct copy of the 2018 Note is attached hereto as **Exhibit E** and incorporated by reference. The 2018 Note modified the terms of the 2016 Note as stated therein.

13. On or about February 16, 2018, and to secure the Loan, the Borrower executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "2018 Loan Agreement" and collectively with the 2016 Loan Agreement, the "Loan Agreement"). The 2018 Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment purchased with the proceeds of the Loan, as more specifically described in the 2018 Loan Agreement

(collectively, the "2018 Equipment" and together with the 2016 Equipment, the "Equipment"). A true and correct copy of the 2018 Loan Agreement is attached hereto as **Exhibit F** and incorporated by reference. The 2018 Loan Agreement modified the terms of the 2016 Loan Agreement as stated therein.

14. The 2016 Note, the 2016 Loan Agreement, the Guaranty, the Loan Modification, the 2018 Note, the 2018 Loan Agreement, and all other documents related to the Loan shall be referred to collectively herein as the "Loan Documents."

15. Pursuant to the Note, the maturity date for the Loan is February 16, 2028, unless sooner accelerated.

16. To perfect its interest in the Equipment, Access Point recorded that certain UCC fixture filing in the land records of Washington County, Oregon on September 27, 2016, as instrument no. 2016-078049, as amended by that certain UCC fixture filing amendment recorded on September 27, 2021 in the land records of Washington County, Oregon as instrument no. 2021-102750, and as further amended by that certain UCC fixture filing amendment recorded on January 17, 2025 in the land records of Washington County, Oregon as instrument no. 2025-002938 (collectively, the "Fixture Filing"). A true and correct copy of the Fixture Filing is attached hereto as composite **Exhibit G** and incorporated by reference.

17. To further perfect its interest in the Equipment, Access Point recorded that certain UCC financing statement with the Nevada Secretary of State on September 29, 2016, as filing no. 2016027782-2, as amended by that certain UCC financing statement amendment filed with the Nevada Secretary of State on September 27, 2021, as filing no. 2021199260-4 (collectively, the "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto as composite **Exhibit H** and incorporated by reference.

18. On April 1, 2020, Borrower, Guarantors, and Access Point entered into that certain COVID-19 Forbearance Agreement (the "Forbearance Agreement", also a Loan Document) whereby Access Point agreed to forbear from collection of all monthly payments of interest and principal due under the Loan commencing April 1, 2020 and expiring on June 30, 2020 (the "Forbearance Period"). A true and correct copy of the Equipment Forbearance Agreement is attached hereto as **Exhibit I** and incorporated by reference.

19. In Section 4 of the Forbearance Agreement, Borrower and Guarantors acknowledged that the outstanding balance of the Note as of March 31, 2020, exclusive of attorneys' fees, was as follows:

| | | |
|---|---|---|
| Principal | $ | 2,243,972.65 |
| Interest | $ | 12,560.03 |
| Total | $ | 2,256,532.68 |

20. In Section 10 of the Forbearance Agreement, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Loan and ratified and reaffirmed all the provisions of the related Loan Documents, except as expressly amended by the Forbearance Agreement.

21. On or about July 1, 2020, Borrower, Guarantors, and Access Point entered into that certain First Amendment to Covid-19 Forbearance Agreement (the "First Forbearance Amendment", also a Loan Document) whereby Access Point agreed to forbear from collection of certain monthly payments due under the Loan commencing June 1, 2020 and expiring on September 30, 2020 (the "Extended Forbearance Period"). A true and correct copy of the First Forbearance Amendment is attached hereto as **Exhibit J** and incorporated by reference.

22. In Section 6 of the First Forbearance Amendment, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Loan and ratified and reaffirmed all the provisions of the Loan Documents, except as expressly amended by the First Forbearance Amendment.

23. On or about October 1, 2020, Borrower, Guarantors, and Access Point entered into that certain Second Amendment to Covid-19 Forbearance Agreement (the "Second Forbearance Amendment", also a Loan Document) whereby Access Point agreed to forbear from collection of certain monthly payments due under the Loan commencing October 1, 2020 and expiring on March 31, 2021 (the "Further

Extended Forbearance Period"). A true and correct copy of the Second Forbearance Amendment is attached hereto as **Exhibit K** and incorporated by reference.

24. In Section 5 of the Second Forbearance Amendment, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Loan and ratified and reaffirmed all the provisions of the Loan Documents, except as expressly amended by the Second Forbearance Amendment.

25. After the end of the Further Extended Forbearance Period, Borrower failed to make monthly payments under the Loan Documents as and when due.

26. On or about June 4, 2026, Access Point, through counsel, sent a letter to Borrower and Guarantors notifying them of their defaults pursuant to the Loan Documents and demanding payment in full of all obligations due and owing under the Loan Documents (the "Default Letter"). A true and correct copy of the Default Letter is attached hereto as **Exhibit L** and incorporated by reference.

27. In the Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Loan Documents would be enforced, such that unless all amounts due and owing were paid by Borrower or Guarantors within ten (10) days from the receipt of the Default Letter, Borrower and Guarantors would be liable for reasonable attorneys' fees and costs.

28. In the Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Loan Documents notwithstanding any alleged prior departure.

29. Borrower and Guarantors failed to make payment within the requisite ten (10) days of the Default Letter.

30. As of May 22, 2026, principal, accrued but unpaid interest, and other charges outstanding under the Loan Documents were as follows:

| | | |
|---|---|---|
| Principal | $ | 957,920.26 |
| Interest (01/01/2026 – 05/29/2026) | $ | 25,770.72 |
| Default Interest (01/01/2025 – 05/29/2026) | $ | 45,594.34 |
| Late Charges | $ | 6,029.36 |
| Loan Fees | $ | 100.00 |
| UCC/Release Fee | $ | 900.00 |
| Payoff Quote Preparation Fee | $ | 250.00 |
| TOTAL | $ | 1,036,564.68 |
| | | |
| Per Diem Interest: | $ | 478.96 |

31. The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the Loan Documents are exclusive of costs of collection and attorneys' fees available under the Loan Documents and applicable law.

32. Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the Loan Documents from May 22, 2026, going forward.

**COUNT I – BREACH OF CONTRACT – NOTE**
**(against Borrower)**

33. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

34. The Note is a valid and enforceable contract between Borrower and Access Point.

35. Access Point fully performed its obligations under the Note.

36. Under the Note, Borrower agreed to make payment in "one hundred eight (108) consecutive equal (or as equal as possible) monthly installments of principal and interest due and payable on the first (1st) day of each calendar month following the 12-month interest only period."

37. Borrower breached the Note by failing to pay to Access Point all amounts due under the Note as and when due.

38. Access Point was damaged as a result of the breach of contract described above.

39. Access Point is entitled to recover from Borrower all amounts due, owing, and accruing under the Loan Documents and applicable law, including but not limited to, the amount due and payable under the Note as of May 22, 2026, in the total amount of $1,036,564.68, consisting of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees, with additional interest

accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT II – BREACH OF CONTRACT – GUARANTY
**(against Guarantors)**

40. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

41. The Guaranty is a valid and enforceable contract between Guarantors and Access Point.

42. Access Point fully performed its obligations under the Guaranty.

43. Under the Guaranty, Guarantors "irrevocably, absolutely and unconditionally guarantee[d] to [Access Point] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the Note and secured by the [Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the Note, late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the Loan Documents."

44. Guarantors breached the Guaranty by failing to pay to Access Point all amounts due by the Borrower under the Note upon demand for same.

45. Access Point was damaged as a result of the breach of contract described above.

46. Access Point is entitled to recover from Guarantors all amounts due, owing, and accruing under the Loan Documents and applicable law, including but not limited to, the amount due and payable under the Note as of May 22, 2026, in the total amount of $1,036,564.68, consisting of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

**COUNT III – UNJUST ENRICHMENT**
**(against Defendants)**

47. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

48. Access Point provided Defendants a valuable service by advancing money to Borrower under the Loan Documents.

49. Defendants requested and knowingly accepted the benefits accruing under the Loan Documents.

50. Defendants' receipt of the aforementioned benefits would be unjust without compensating Access Point.

51. Defendants have been unjustly enriched in the amount of the outstanding unpaid principal and interest under the Loan Documents, plus expenses, costs, and attorneys' fees.

52. Defendants, in fairness and good conscience, should remit to Access Point the extent of the value conferred, which includes all amounts due, owing, and accruing under the Loan Documents, and applicable law, including but not limited to, (a) the amount due and payable under the Note as of May 22, 2026, in the total amount of $1,036,564.68, consisting of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT IV – REPLEVIN OF THE COLLATERAL
**(against Borrower)**

53. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

54. Pursuant to the Loan Agreement and Article IX of the Uniform Commercial Code and as a result of Borrowers' default under the Loan Agreement, Access Point, as the holder of perfected first-priority security interests in the Equipment, has an immediate right of repossession of the Equipment.

55. Borrower wrongfully remains in possession of the Equipment despite Access Point's demand for its return.

56. Access Point is damaged by Borrower's retention of the Equipment because it continues to diminish in value.

57. To the best of Access Point's knowledge, the Equipment has not been taken for a tax, assessment, or fine pursuant to statute or seized under execution of judgment.

**COUNT V – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-1-11**
**(against Defendants)**

58. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

59. Pursuant to the Loan Documents, Defendants are required to pay Access Point all costs, including reasonable attorneys' fees and expenses, incurred by Access Point in enforcing performance or collecting any payments due under the Loan Documents.

60. Moreover, Access Point made demand upon Defendants for its attorneys' fees and costs pursuant to O.C.G.A. § 13-1-11, on June 4, 2026.

61. As of the date of this Complaint, Defendants have failed to pay Access Point the amounts outstanding under the Note and Guaranty.

62. As Defendants failed to make the requisite payment within ten (10) days of the Default Letter, Access Point is entitled to judgment in its favor for statutory attorneys' fees calculated by reference to O.C.G.A. § 13-1-11.

**COUNT VI – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-6-11**
**(against Defendants)**

63. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

64. As shown by the above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Access Point undue trouble and expense.

65. Accordingly, Access Point is entitled to recover its expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment in its favor and against Defendants, as follows:

(i) As to Count I: Judgment against Defendant Hillsboro Hotel Holdings Group, LLC for breach of the Note in the total amount of $1,036,564.68 as of May 22, 2026 (comprised of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees), with additional interest accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(ii) As to Count II: Judgment against Defendants Dean Kirkland and Kristin Kirkland, jointly and severally, for breach of the Guaranty in the total amount of $1,036,564.68 as of May 22, 2026 (comprised of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees), with additional interest accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(iii) As to Count III: Reimbursement by Defendants to Plaintiff for unjust enrichment, to the extent of the value conferred, which includes all amounts due, owing, and accruing under the Loan Documents, and applicable law, including but not limited to the amount due and payable under the Note as of May 22, 2026 in the total amount of $1,036,564.68, consisting of $957,920.26 in principal, $71,365.06 in accrued interest, and $7,279.36 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $478.96 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(iv) As to Count IV: A final judgment in replevin against Defendant Hillsboro Hotel Holdings Group, LLC awarding Plaintiff permanent

possession of the Equipment, or the value thereof, if delivery cannot be had, along with damages for the unlawful retention of such property;

(v) As to Count V: An award of Plaintiff's attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan Documents to the fullest extent permitted under O.C.G.A. § 13-1-11 and Georgia law;

(vi) As to Count VI: An award of Plaintiff's attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan Documents to the fullest extent permitted under O.C.G.A. § 13-6-11 and Georgia law; and

(vii) For such other and further relief as this Court deems just, proper, and equitable.

Submitted this 2nd day of July 2026.

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352
Austin B. Alexander
Georgia Bar No. 926059

*Attorneys for Plaintiff Access Point Financial, LLC*

**THOMPSON HINE LLP**
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile: 404-541-2905
*alexandra.nelson@thompsonhine.com*
*austin.alexander@thompsonhine.com*